## JACKSON v FORD

Ohio Appeals, 2nd Dist, Fayette Co

No 222. Decided Dec 31, 1934

W. S. Paxson, Washington C. H., for plaintiff in error.

E. L. Bush, Washington C. H., for defendant in error.

**OPINION**

By HORNBECK, PJ.

Counsel for Jackson relies upon **Roxborough v Messick, 6 Oh St 448** and Millard v Green, 9 A.L.R. 1610 and annotations thereto. Counsel for Ford relies upon the provisions of the Uniform Stock Transfer Act, §§8673-1 to 8673-22 GC, inclusive.

Upon recognized equitable principles, if controlling, Jackson should recover damages of the value of Hitchcock's interest as pledgee of the stock of The Johnson Motor Company represented by certificate No. 10 to a sum not in excess of the amount due on his $2500 note. The general title to the stock was in Johnson; Hitchcock and Jackson only had special rights of possession as pledgees. When Hitchcock got possession of the stock from Jackson it was by subterfuge, upon the express agreement that he would take it to Johnson, secure $2500.00 from him, return it to Jackson and apply it on Hitchcock's note to Jackson. To the extent that Hitchcock was clothed with authority to do the specific thing which he

had agreed to perform he was a trustee. He was, likewise, insofar as he might make use of the stock in a different manner than that for which it was turned over to him, a trustee ex maleficio. When he turned the stock over to Ford he, Hitchcock, was not the owner and Ford, in accepting the stock as security for an antecedent debt, advanced no new money, gave no consideration whatever for the certificate and as against Jackson he was not entitled to the possession of the stock. This position is in accord with the holding in Roxborough v Messick et, supra, and Millard v Green, supra, and particularly the annotations thereto and also a note to Randall v Curtis, 12 A.L.R. 1050, in which case the annotator quoting from Pomeroy's Equity Jurisprudence, 3rd Ed. San Francisco, 1905, pages 748 and 749, said:

¶"It is said that able courts have denied that an antecedent debt ever can be valuable consideration, and that the differing ways of using such a debt—securing, postponing its payment, discharging it—have clouded and entangled the subject so that a great conflict of judicial opinion has ensued. In that association it also was said that in many, perhaps a majority of states, it has been settled that by the law merchant a creditor taking negotiable commercial paper to secure an antecedent debt may be a bona fide holder of it, but that this is neither precedent nor authority when a definition of valuable consideration within the equitable doctrine of good faith purchases is essayed, and that, upon principle, a conveyance of property, real or personal, to secure a pre-existing debt, does not make the grantee a bona fide purchaser, since he parts with nothing, gives up no right, and puts himself in no worse plight than before."

Notwithstanding, if the Uniform Stock Transfer Act has application to the transaction between Jackson and Hitchcock when Jackson turned the stock over to Hitchcock to take to Johnson to secure the money thereon and the transaction between Hitchcock and Ford, when he undertook to pledge the stock with Ford as security for an antecedent debt, then by the terms of the act, the judgment of the trial court was right. Although the Uniform Stock Transfer Act is somewhat ambiguous in terms and difficult of interpretation, after careful study thereof, we have come to the conclusion that it is not controlling of the rights of the parties in this case. Immediately pre-

ceding the text of the Act there is set forth in the Code a definition of "Transfer" from Vouvier's Law Dictionary, Baldwin Edition, page 1185:

"The act by which the owner of a thing delivers it to another person with the intent of passing the rights which he has in it to the latter."

It is evident that Johnson, the owner never delivered the stock to any person with the intent of passing all of his rights in it to that other. Likewise in terms the statute provides, §8675-22 GC that "Transfer" means "transfer of a legal title" and "title" means "legal title and does not include a merely equitable or beneficial ownership of interest." No holder of this stock subsequent to Johnson took it by transfer or held legal title thereto under the Act. §8673-21 GC defines "owner" as

"The person to whom a certificate was originally issued, is the person appearing by the certificate to be the owner thereof, and of the shares represented thereby, until and unless he endorses the certificate to another specified person, and thereupon such other specified person is the person appearing by the certificate to be the owner thereof until and unless he also endorses the certificate to another specified person."

That is to say, that any person who deals with the holder of a certificate who is not specifically designated as an endorsee thereon must be presumed to have special ownership therein only, namely, an equitable or beneficial ownership or interest.

Sec 8673-7 GC provides, so far as is pertinent here, that a certificate may be reclaimed and transfer rescinded:

"If the endorsement or delivery of a certificate (a) Was procured by fraud or duress. (b) Was made under such mistake as to make the endorsement or delivery inequitable * * * unless the certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful * * *."

That portion following the word "unless" in the section just quoted will not protect Ford in this transaction because, by the terms of the statute, the certificate was not transferred to him as he was put on notice that Hitchcock was not the owner thereof. In this situation, the case of **Roxborough v Messick, 6 Oh St, 448** and Miller

v Green, 9 A.L.R., 1610 and annotations are controlling because Ford could not be said to be a bona fide purchaser of the stock for value without notice. Roxborough v Messick, supra, was a case involving a promissory note, an instrument with the highest form of negotiability and the court announces in the syllabus that:

"When the note of a third person is transferred, bona fide, before due, as collateral security, and for value, such as in consideration of a loan, or advancement, or a stipulation, express or implied, of further time to pay a pre-existing debt, or in consideration of a change of securities of a pre-existing debt, or the like, the holder of such collateral will be protected from infirmities affecting the instrument before it was thus transferred. But when a debt is created, without any stipulation for further security, and the debtor afterward, without any obligation to do so, voluntarily transfers a negotiable instrument, to secure the pre-existing debt, and both parties are left, in respect to the pre-existing debt, in statuo quo, no new consideration, stipulation for delay, or credit being given, or right parted with, by the creditor, he is not a holder of the collateral for value, in the usual course of trade, and receives it subject to all the equities existing against it at the time of the transfer."

If we are correct in our theory of the law of this case, then the usual principles of equity as recognized in the cited cases are determinative. §8673-18 GC. If the statute has application, then we are in error. It is our judgment that the statute does not reach nor define the rights of the parties in this action.

Judgment reversed and final judgment for Jackson, in the sum of his damages, which sum should be fixed by the trial court and for which purpose the cause is remanded.

KUNKLE & BARNES, JJ, concur.